**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

WILLIE MAE CONNER,                            :

      Plaintiff,                                :

vs.                                          :        CA 14-0393-C

CAROLYN W. COLVIN,                           :
Acting Commissioner of Social Security,
                                             :
      Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and Supplemental Security Income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 20 & 22 ("In accordance with provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the June 26, 2015 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1]     Any appeal taken from the judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 20 & 22 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

Plaintiff alleges disability due to coronary problems, including cardiomyopathy and arrhythmia-bradycardia, and hypertension. The Administrative Law Judge (ALJ) made the following relevant findings:

**1.     The Claimant meets the insured status requirements of the Social Security Act through December 31, 2012.**

**2.     The Claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 11, 2008 through her date of last insured of December 31, 20012 (20 C.F.R. § 404.1571 *et seq.*).**

**3.     Through the date last insured, the claimant had the following severe impairments: nonischemic cardiomyopathy with chronic heart failure, hypertension, and arrhythmia-bradycardia (20 C.F.R. § 404.1520(c)).**

.      .      .

**4.     Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1 (20 C.F.R. §  404.1520(d), 404.1525 and 404.1526).**

.      .      .

**5.     After careful consideration of the entire record, the undersigned finds that, through the date of last insured, the Claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(b) except as noted. The Claimant can lift and carry twenty pounds occasionally and ten pounds frequently.   She can stand/walk for two hours during the workday.   She can sit for six hours during the workday.   She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.   She cannot climb ladders, ropes, or scaffolds.   She must avoid concentrated exposure to extreme temperatures, fumes, odors, dusts, gases, and poor ventilation.   She must avoid all exposure to hazardous machinery and unprotected heights.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the

requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the Claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the Claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the Claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the Claimant's symptoms to determine the extent to which they limit the Claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The Claimant is a forty-five year old woman with a high school education who alleges she is disabled due to various heart impairments.   She testified she regularly has swelling in her legs, which leads her to elevate her legs daily.  She testified she remains seated or is lying down for most of the day.  However, she testified she does cook, washes clothes, and drives.  She testified she continues to have arrhythmia despite medication.  She testified she is nearly always tired and/or fatigued.  She testified she could stand for thirty minutes and walk fifty yards, but she previously indicated she could walk a quarter of a mile (Ex. 4E). She testified she could walk up a flight of stairs, but her legs would hurt.  She testified her medications make her go to the bathroom more frequently.  She wrote she can perform her personal care tasks independently (Ex. 4E).  She stated she goes shopping every two weeks.   She wrote she attends football games every week and goes to church once per month.

The objective evidence shows the Claimant had her heart impairments prior to the alleged onset date (Ex. 6F).   In 2007, an echocardiogram showed the Claimant had significant systolic dysfunction, yet she was able to work at substantial gainful activity levels that year (Ex. 17D). Additionally, prior to the alleged onset date, a Holter monitor showed the Claimant had arrhythmias (Ex. 2F).

Although the Claimant has serious heart impairments, the evidence tends to indicate they are not as limiting as the Claimant has alleged.  Moreover, the treatment report shows the Claimant's condition has improved over time and with medication (Ex. 16F).   In September 2008, a heart catheterization showed the Claimant had normal coronary arteries, and she had an ejection fraction of 40% (Ex. 2F).  An echocardiogram at the same time showed she had an enlarged left ventricle and her ejection

fraction was only 30% (Id.)  A heart catheterization approximately a year later in November 2009 showed the Claimant still had unobstructed coronary arteries and a 40% ejection fraction (Ex. 11F).  By September 2012, an echocardiogram showed the Claimant's ejection fraction had improved to 45-54% (Ex. 15F).  Additionally, that echocardiogram showed the Claimant's left ventricle had returned to a normal size.  Additionally, an arteriogram from September 2008 showed small irregularities in her anterior arteries, but subsequent arteriograms were normal (Exs. 11F and 12F).

The clinical reports also indicate her symptoms are not as severe as she has alleged.  The Claimant contends she has near daily swelling; however, the treatment reports have consistently shown the Claimant does not have significant problems [with] swelling or edema in her extremities (Exs. 2F, 6F, 11F, 12F, and 15F).  Moreover, the treatment reports have shown the Claimant has a normal heart rate and rhythm, which indicates the treatment to control her arrhythmia has been effective (Id.).  The Claimant also had a grade II/IV heart murmur (Exs. 11F and 12F).  However, by August 2011, the treating cardiologist indicated the murmur had gone away as he reported then and thereafter that the Claimant did not have a murmur (Ex. 12F).

The treatment to control her hypertension also appears to have been effective.  The Claimant's highest reported blood pressure reading was in May 2009 when it was 152/94 (Ex. 11F).  Subsequent readings have been within normal range or slightly above 120/80 (Exs. 11F, 12F, and 15F).

The clinical reports also indicate that with the correct treatment her symptoms have lessened.  Initially, the Claimant was not taking several medications [that] were added later and that seemed to have improved her symptoms such as Coreg, Lasix, Aspirin, and Zocor (Ex. 15F).  By May 2009, the Claimant's treating cardiologist wrote the Claimant was doing well (Ex. 11F).  He echoed that statement February 2010, May 2010, November 2010, and October 2012 (Exs. 11F and 12F).

In addition to considering the objective evidence, the undersigned has also considered various assessments related to the Claimant's abilities and limitations.  The undersigned has afforded significant weight to the assessment provided by the medical expert after the hearing in October 2012 (Ex. 13F).  Subsequent to the hearing, the undersigned sent interrogatories to the medical expert requesting his assessment of the Claimant's abilities and limitations given the medical records.  The undersigned sent the records to the same medical expert who testified at the first hearing in this matter.  Based upon his review of the Claimant's medical records, the medical expert opined the Claimant could perform sedentary work.  This assessment is well supported by the objective evidence.  Notably, the Claimant's treating cardiologist repeatedly wrote the Claimant was doing well.  Moreover, treatment reports have shown that, with proper treatment, the Claimant's symptoms have been reduced.

Additionally, the Claimant activities, helping care for her children, driving, shopping, cleaning laundry, and cooking, are consistent with at least sedentary work ability. Finally, the medical expert correctly observed the inconsistencies between the treating cardiologist's opinions and his treatment reports, which are discussed below.

The assessment provided by the medical consultant from the Disability Determination Service has been afforded the most weight (Ex. 5F). Although the medical consultant's assessment was prepared in December 2008, it has been afforded the most weight because it was affirmed by the medical expert's more general assessment, it is more detailed than the medical expert's assessment, and it is in line with the treatment reports. Like the medical expert, the medical consultant believed the claimant could only stand/walk for two hours, consistent with a reduction to sedentary work. The medical consultant also limited the Claimant to occasionally working in various positions. The assessment is also deemed valid because the treatment reports show the Claimant's symptoms were worse at the time he made his assessment as compared to after December 2008. This fact demonstrates the Claimant's condition did not worsen following the assessment meaning that it accurately reflects the Claimant's abilities when her symptoms were at their worse. The evidence also demonstrates, and the treating cardiologist confirms, that the Claimant's symptoms have improved with treatment. The Claimant's heart function was also moderately severe in 2008, and it has improved since that time.

The undersigned has also considered the two assessments provided by the Claimant's treating cardiologist (Exs. 10F and 16F). In both assessments dated August 2008 and October 2012, the cardiologist opined the Claimant is totally disabled and unable to work eight hours a day, five days a week or an equivalent work schedule. Additionally, he wrote the Claimant could not work for two hours at a time. These assessments have been afforded little weight even though the assessments were authored by the treating cardiologist. As noted by the medical expert, there are several inconsistencies between his assessments and his treatment reports. Although the representative submitted the latter assessment in the hopes of explaining the inconsistencies observed by the medical expert, the treating cardiologist's latter assessment does not address those inconsistencies (Ex. 17E). In fact, his latter assessment seems to be internally inconsistent in [and] of itself as he wrote the Claimant has improved with treatment and that she will continue to respond to treatment (Ex. 16F). As discussed above, the cardiologist has stated several times since 2009 that the Claimant was doing well and she was able to exercise at least two days a week (Ex. 12F). He also observed the Claimant did not have side effects from her medication and that she did not have swelling as she contends (Ex. 12F). The improvement, as demonstrated by her recent echocardiogram results that showed only mild ventricular dysfunction, shows at the very least that the Claimant would have been much more capable in October 2012 as opposed to August 2008. However, the cardiologist believed the Claimant was as

5

limited in 2012 as she was in 2008 despite the improvement in her condition. This inherent inconsistency further indicates the treating cardiologist's assessments are not accurate or valid. Finally, the Claimant's activities also demonstrate the Claimant is far more active than what the cardiologist indicated. Accordingly, the treating cardiologist's assessments have been afforded little weight.

The undersigned has also considered the Claimant's allegations and testimony in determining her residual functional capacity. Because her allegations and testimony are only partially credible, they have been afforded only partial weight.

The records show several inconsistencies between the Claimant's statements and the objective evidence. For example, the Claimant testified she has adverse side effects to her medication, yet the treatment reports show she denied having side effects. The Claimant also testified she could only walk 50 yards, but in November 2008 she stated she could walk one quarter of a mile, 400 yards. This inconsistency is interesting because the Claimant stated she was more capable when her symptoms were worse as compared to her recent testimony in which she stated she was more limited when her symptoms were improved. These puzzling statements undermine the believability of the Claimant's statements. The Claimant's allegation regarding daily swelling is also not supported by the objective evidence. The treatment reports have consistently stated the Claimant does not have any swelling or edema in her extremities. The Claimant's daily activities also indicate the Claimant is more capable than what the Claimant has alleged. The fact the Claimant was able to work for more than a year (2007) with symptoms worse than what she has had for the past several years also indicates the Claimant's testimony is not accurate.

**6.     Through the date last insured, the Claimant was unable to perform any past relevant work (20 CFR § 404.1565).**

The Claimant had past relevant work as a lumbar (sic) grader (DOT 669.687-030, light, semi-skilled). The vocational expert testified a person with the Claimant's vocational profile and residual functional capacity would not be able to perform the Claimant's past relevant work. Accordingly, the Claimant was unable to perform past relevant work.

.     .     .

**10.     Through the date last insured, considering the Claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the Claimant could have performed (20 C.F.R. § 404.1569 and 404.1569(a)).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the Claimant's residual functional

capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. § Part 404, Subpart P, Appendix 2. If the Claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the Claimant's specific vocational profile (SSR 83-11). When the Claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the Claimant has solely nonexertional limitations, section 204.00 in the Medical Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

Through the date last insured, if the Claimant had the residual functional capacity to perform the full range of light[2] work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.21. However, the Claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the Claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirement of representative occupations such as production assembler (DOT 723.684-010, light, unskilled) of which there are 250,000 jobs nationally and 11,000 jobs regionally, folder (DOT 685.687-014, sedentary, unskilled) of which there are 174,000 jobs nationwide and 1,400 jobs statewide, ticket seller (DOT 211.467-030, light unskilled) of which there are 25,000 jobs in the United States and 1,200 jobs in Alabama.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the <u>Dictionary of Occupational Titles</u>.

Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the Claimant's age, education, work experience, and residual functional capacity, the Claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

---

[2] This reference to light work appears to be a mistake in the opinion since the ALJ and the Appeals Council both determined that the Plaintiff would only be able to perform a limited range of sedentary work.

> **11.     The Claimant has not been under a disability, as defined in the Social Security Act, at any time from August 11, 2008, the alleged onset date, through December 31 2012, the date last insured (20 CFR 404.1520(g)).**

(Tr. 16-22 (internal citations omitted; emphasis in original).)

The claimant asked the Appeals Council to review the ALJ's decision, which was granted.   After consideration of the entire record and comments received after the Appeals Council notified the claimant that it had granted the request for a review, it affirmed the ALJ's decision after making the following findings:

1.     The claimant met the special earnings requirements of the Act on August 11, 2008, the date the claimant stated she became unable to work, and met them through December 13, 2013.

   The claimant has not engaged in substantial gainful activity since August 11, 2008.

2.     The claimant has the following severe impairments: non-ischemic cardiomyopathy with chronic heart failure, hypertension, and arrhythmia-bradycardia, but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

3.     The claimant has the residual functional capacity to perform a reduced range of work at the sedentary exertional level (Finding 5 of the Administrative Law Judge's decision).

4.     The claimant is unable to perform past relevant work.

5.     The claimant was 45 years old on the date of the Administrative Law Judge's decision, which is defined as a younger individual, and has a high school education.  The claimant's past relevant work is semiskilled or skilled.

6.     If the claimant had the capacity to perform the full range of the sedentary exertional level, 20 CFR 404.1569 and Rule 201.21, Table No. 1 of 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of not disabled.  Although the claimant's exertional and non-exertional impairments do not allow her to perform the full range of the sedentary exertional level, using the above-cited Rule

as a framework for the decision making, there are a significant number of jobs in the national economy which she could perform.

7.      The claimant was not disabled, as defined in the Social Security Act, at any time from August 11, 2008 through January 22, 2013, the date of the Administrative Law Judge's decision.

Decision of the Appeals Council, Tr. 4-6. Thus, the Appeals Council, by adoption of portions of the ALJ's decision coupled with findings of its own, determined that "the claimant is not entitled to a period of disability or disability insurance benefits under sections 216(i) and 223, respectively, of the Social Security Act." (*Id.* at 6).

## DISCUSSION

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Soc. Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  *Id.* at 1005. Although "a

---

[3]      "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

claimant bears the burden of demonstrating an inability to return to h[er] past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform a limited range of sedentary work, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence."  *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).  And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'"  *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

---

[4]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

On appeal to this Court, Conner asserts three reasons why the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the Appeals Council and the ALJ erred in giving little weight to the opinion of the treating cardiologist, Dr. John A. Mantle, MD ; (2) the ALJ erred in giving significant weight to the opinion of a medical expert consulted after the hearing who did not hear any testimony; and (3) the ALJ erred in giving the most weight to the opinion of the DDS consultant, who provided an opinion in 2008 and was without access to most of the evidence of record. The Court will address each issue in turn, combining the analysis of the last two issues.

**A.**    **Opinions of Plaintiff's Treating Physician, Dr. John A. Mantle.** Conner initially contends that the ALJ erred in failing to accord substantial weight to the opinions of her treating cardiologist, Dr. John A. Mantle. On August 21, 2008, Mantle completed a Certification of Health Care Provider[5] ("CHCP") and then completed a medical source statement (that is, a "PCE") on October 9, 2012. (*See* Tr. 582, 587 & 669).

In the CHCP, Mantle indicated that plaintiff suffered from chronic "cardiac related problems" that would require periodic visits to his office so that her condition could be monitored.  His opinion was that she was incapable of engaging in work activities for an indefinite period of time.  He also provided that her onset date was August 11, 2008, the day of her visit to his office.  Mantle described her treatment regimen as the taking of prescription drugs, evaluation and treatment as needed.  (*See* Tr. 582-583).  His assessment on October 9, 2012 was that she "could not perform sustained work on a regular and continuing basis, i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule[.]"  Her treatment for "noncoronary cardiomyopathy"

---

[5] Dr. Mantle completed a form established by the U.S. Department of Labor for use in gathering information relevant to the provisions of the Family and Medical Leave Act of 1993.

at that time was the taking of prescribed medication combined with lifestyle changes that appeared to be working since he added that although her condition remained chronic, "she has shown some improvement … [and] should continue to respond to ongoing medical Rx[.]" (Tr. at 669).

The law in this Circuit is clear that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'" *Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished), quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (other citations omitted). In other words, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004) (other citation omitted); *see Nyberg, supra,* 179 Fed.Appx. at 591 (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Soc. Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam). Most relevant to this case, an ALJ's articulation of reasons for rejecting a treating source's PCE must be supported by substantial evidence. *See id.* ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. In this case, therefore, the critical question is whether substantial

evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Social Security Admin.,* 389 Fed.Appx. 944, 947-948 (11th Cir. Jul. 28, 2010) (per curiam) (same).

In this case, the ALJ specifically determined that "little" weight was due to be afforded Mantle's assessments because they were inconsistent with the objective evidence, including plaintiffs listed activities, and his own treatment notes. Additionally, he determined that the PCE of 2012 was internally inconsistent. (Tr. 19-20.)

> The undersigned has also considered the two assessments provided by the Claimant's treating cardiologist (Exs. 10F and 16F). In both assessments dated August 2008 and October 2012, the cardiologist opined the Claimant is totally disabled and unable to work eight hours a day, five days a week or an equivalent work schedule. Additionally, he wrote the Claimant could not work for two hours at a time. These assessments have been afforded little weight even though the assessments were authored by the treating cardiologist. As noted by the medical expert, there are several inconsistencies between his assessments and his treatment reports. Although the representative submitted the latter assessment in the hopes of explaining the inconsistencies observed by the medical expert, the treating cardiologist's latter assessment does not address those inconsistencies (Ex. 17E). In fact, his latter assessment seems to be internally inconsistent in [and] of itself as he wrote the Claimant has improved with treatment and that she will continue to respond to treatment (Ex. 16F). As discussed above, the cardiologist has stated several times since 2009 that the Claimant was doing well and she was able to exercise at least two days a week (Ex. 12F). He also observed the Claimant did not have side effects from her medication and that she did not have swelling as she contends (Ex. 12F). The improvement, as demonstrated by her recent echocardiogram results that showed only mild ventricular dysfunction, shows at the very least that the Claimant would have been much more capable in October 2012 as opposed to August 2008. However, the cardiologist believed the Claimant was as limited in 2012 as she was in 2008 despite the improvement in her condition. This inherent inconsistency further indicates the treating cardiologist's assessments are not accurate or valid. Finally, the Claimant's activities also demonstrate the Claimant is far more active than what the cardiologist indicated. Accordingly, the treating cardiologist's assessments have been afforded little weight.

(*Id.*) The undersigned construes the ALJ's comments as an implicit (if not explicit) finding that Dr. Mantle's opinions were conclusory and inconsistent with the doctor's own medical records, as well as not bolstered by the other evidence of record. (*See id.*)

A review of the transcript reflects that Dr. Mantle has treated plaintiff since May 14, 2007. (*See, e.g.*, Tr. 494-495 (first record of visit reflects a referral for arrhythmia-bradycardia and bundle branch block-left with a possible murmur).) Mantle ordered an echocardiogram on June 11, 2007 that confirmed his diagnosis and he prescribed the appropriate medications. (Tr. 490-491.) He saw her again on August 27, 2007 to adjust her medications based on her complaints of edema in the hands and feet. He noted that she would "work as tolerated" and was encouraged to avoid overexertion or becoming overheated. (Tr. 483-484).

Approximately ten months later, Plaintiff returned to Mantle with complaints of an irregular heartbeat and was considered to have symptoms of atrial fibrillation. A Holter monitor was worn and the readings suggested atrial fibrillation. (Tr. 473). This information led to the administration of a stress test on August 8, 2008. Based on risk factors, the changing symptoms she reported and the abnormal stress test, it was suggested that she proceed with arteriographic studies to exclude coronary artery disease. (Tr. 459). On September 9, 2008, Dr. George P. Hemstreet, performed a left heart catheterization, selective coronary angiography and left ventriculogram. The findings revealed normal coronary arteries with an ejection fraction of about 40%. (Tr. 454-457). Mantle adjusted her medication because of Plaintiff's described symptoms and set her for a visit in six months. (*Id*. at 454).

Plaintiff's follow-up visits from May 10, 2010 through February 28, 2012 are consistent with the original diagnosis and show improvement because she followed the regimen suggested by Mantle.  On May 10, 2010, it was noted that she was doing well overall and prior anteriograms had been normal with no new or changing complaints. (Tr. 641).  In November 2010, it was determined that "[s]he [had] stabilized on the current program, without problems with either chest pain, palpitations or shortness of breath, although she still has some discomfort at times." (Tr. 638).  On her next visit, May 9, 2011, on complaints of shortness of breath, described as mild, edema and heart racing, she was instructed to continue her activities as tolerated, change her dose of Coreg, continue with other medications as prescribed, reduce her risk factors, seek regular care and return for a follow-up visit in one month.  (Tr. 633-636).  The June 13, 2011 visit reveals similar recommendations: her medications were altered and she was given similar instructions to those that were given in May and scheduled for a follow-up in three months.  (Tr. 629-632).

The follow-up visit on August 22, 2011 was a positive visit.  Mantle's records reveal that Plaintiff was stabilized and did not have problems with chest pain, palpitations or shortness of breath although she reported some discomfort at times. Mantle noted that she was "doing better on the increased dosage" of Coreg.  (Tr. 625). Six months later, February 28, 2011, Plaintiff went for her follow-up with complaints of shortness of breath and some chest pain.  She was instructed to continue her activities as tolerated, take her medications as prescribed, seek regular care and return in six months. (Tr. 621-624).

After the visit on August 27, 2012, Plaintiff was scheduled for an echocardiogram and a renal duplex.  (Tr. 648).  The notes from October 3, 2011 record that she did not have chest pain at the time and the renal duplex completed on September 25, 2011 did

not show evidence of renal artery stenosis.  The echocardiogram performed on the same date indicated a "mildly reduced ejection fraction" that had improved since the 2008 test.  He recommended a change in diet, continued activities as tolerated, same medications and a return visit in six months.  (Tr. 657-658).

In addition to the clinical reports, the ALJ considered the assessments Dr. James Anderson (Ex. 14F) and Dr. Robert M. Little (Ex. 5F).  Interrogatories were sent to Anderson after the hearing and based on his review of the record; he formed the opinion that Plaintiff could perform sedentary work.  (Tr. 649-652 ).  He also determined that Dr. Mantle's opinion that the claimant was unable to perform work activities in August 2008 was in conflict with his treatment notes that allowed her to continue with her activities and did not reveal an objective basis for precluding sedentary work.  (Id. at 651).

Little's assessment was prepared early in the process, December 2008, but the ALJ afforded the most weight to his findings as is reflected in the ultimate RFC.  His findings were considered most influential because the treatment notes reflect that the claimant's symptoms and conditions were at their worst stage in her treatment history and did not worsen but improved with the treatment regimen prescribed by her cardiologist.  Her condition was considered moderately severe in 2008 and had improved by the date of the hearing.  Specifically, Little's findings were that Plaintiff could lift twenty pounds occasionally, ten pounds frequently, stand and/or walk for at least two hours in a workday, sit at least six hours in a workday and push and pull with her hands and feet on an unlimited basis. He thought her ability to climb ramps and stairs, balance, stoop, kneel, crouch, and crawl were only occasionally limited.  He did not believe that she should ever climb ladders, ropes or scaffolds.  Little did not believe she had any manipulative, visual or communicative limitations but did find that she

should avoid concentrated exposure to extreme heat and cold and any fumes, odors, dusts, gases, poor ventilation.  Finally, it was his opinion that she should avoid all exposure to environmental hazards such as machinery and heights.  (Tr. 498-505).[6]

Upon further review by the Appeals Council, that body also noted that Dr. Mantle's opinion was conclusory and not supported in the record.  (Tr. 5).  In addition, the Appeals Counsel rejected the argument, as interpreted by the undersigned, currently presented by the claimant:

> The claimant's representative argues that it is improper to credit only part of Dr. Mantle's statement (that the claimant is improving) while ignoring the rest (that the claimant cannot sustain work).  To the contrary, the statement that the claimant is improving is well supported by the record, including Dr. Mantle's contemporaneous October 3, 2012 progress note; Dr. Mantle's opinion that the claimant cannot sustain work, on the other hand, is conclusory and not well supported by the record, so it does not merit significant weight.

(Tr. 5).

Based on the foregoing, the Court finds that the ALJ was correct in giving little weight to that portion of Dr. Mantle's assessments of August 8, 2008 and October 9, 2012 that Plaintiff was incapable of gainful employment because his findings are inconsistent with the objective medical evidence, including his own examination notes. In other words, Dr. Mantle's objective clinical findings are inconsistent with the limited vocational findings he made and therefore, the Court finds the ALJ's articulated reasons for giving little weight to his findings are supported by substantial evidence. Although counsel argues that the notations of claimant's improvement do not translate into vocational abilities, there is no dispute that when her condition was first diagnosed, she was capable of performing her past relevant work.  In addition, the evidence does

---

[6] At the time Little composed his RFC assessment, there were no statements from Dr. Mantle in the record for him to consider.

support improvement in her conditions and the continued ability to perform her daily activities as tolerated.  When you couple that evidence with the assessments provided by Drs. Anderson, Little and the vocational expert, the record evidence clearly supports the conclusion that she was capable of engaging in a limited range of sedentary work activities. Accordingly, the undersigned discerns no error in the ALJ affording little weight to Mantle's opinions of Plaintiff's abilities to engage in gainful employment.

     **B.**  <u>**The ALJ Erred in Giving Weight to the Opinions of Consulting Doctors.**</u> In her brief, Plaintiff contends that the ALJ's decision to give significant weight to the opinion of Dr. Anderson, a medical expert who testified by the means of post-hearing interrogatories,  requires remand of this action.  First, he attacks the credibility of Anderson because he obviously failed to remember that he had previously served as a medical expert during a hearing held on February 3, 2010, involving the same plaintiff. It is unclear, however, how this mistake would somehow diminish his opinions formed after a review of the records in this case.   The undersigned does not agree that Anderson's credibility in this action is undermined by his response to Interrogatory No. 4.  (*See* Ex. 14F, Tr. 650).

     Secondly, plaintiff argues that Anderson's opinions are expressed on a form and do not contain sufficient information to allow any weight to be given them.  Specifically, it is argued that he did not address the symptoms of shortness of breath, palpitations and chest discomfort.  Additionally, it is argued that he did not provide a rationale for his disagreement with Dr. Mantle's 2008 assessment.   This position requires little discussion since it is clear from a review of the form completed by Anderson and the analysis of the ALJ, that he did provide his rationale for discounting the vocational assessments of Mantle and clearly referenced treatment notes where the symptoms listed were successfully treated with medication and regular checkups.

Plaintiff also argues that it was error for the ALJ to give "the most weight" to the assessment provided by a medical consultant from the Disability Determination Service dated in December 2008. (Ex. 5F).

With regard to Plaintiff's argument that the assessment of Dr. Anderson was weighted to heavily by the ALJ, the only citation presented in support of her position is to *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11ᵗʰ Cir. 1990), apparently for the proposition that the "opinion of a non-examining reviewing physician is entitled to little weight and taken alone, does not constitute substantial evidence to support an administrative decision." (Doc. 13 at 6).  The entirety of the footnote is:

> The ALJ's finding regarding Ms. Swindle's residual functional capacity mirrors the conclusions reached by Dr. Hibbett, the consulting doctor who reviewed the medical evidence after the hearing. Although Dr. Hibbett opined that Ms. Swindle was capable of a full range of sedentary work, with the restriction that she avoid exposure to the sun, his opinion neither took into account nor refuted Ms. Swindle's non-exertional symptoms of pain and dizziness. Because Dr. Hibbett did not examine Ms. Swindle, his opinion is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision. *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir.1985).

*Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir. 1990).  Plaintiff then references *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090 (11ᵗʰ Cir. 1985), *Johns v. Bowen*, 821 F.2d 551 (11ᵗʰ Cir. 1987), *Sharfarz v. Bowen*, 825 F.2d 551 (11ᵗʰ Cir. 278 (11ᵗʰ Cir. 1987) and *Lamb v. Bowen*, 847 F2d 698 (11ᵗʰ Cir. 1988) for the general propositions that "reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision[;] the good cause requirement in affording little weight is not provided by the report of a nonexamining physician where it contradicts the report of the treating physician; and opinions of nonexamining physicians are entitled to little weight when contrary to those of an examining physician and standing alone do

not constitute substantial evidence.   While the Court does not take issue with these general propositions, it is not entirely clear as to how they apply in this case.

For instance, the citation to *Swindle* is not particularly helpful.   As explained by Magistrate Judge Nelson, when the weight given to the opinion of a non-examining physician comes under attack by a plaintiff, the analysis is more complicated than suggested by the Plaintiff in this case:

> *Swindle* remains good law in this Circuit, **but,** under certain circumstances, "substantial evidence supports [an] ALJ's decision to assign great weight to" the opinion of a state agency physician. *Ogranaja,* 186 Fed. App'x at 850. In *Ogranaja,* the court cited *Swindle,* but then noted that, there,
>
> > [t]he ALJ arrived at his decision **after considering the record in its entirety and did not rely solely on the opinion of the state agency physicians.** The ALJ found that, unlike [the treating physician's] opinions, the expert opinions of the non-examining state agency physicians were supported by and consistent with **the record as a whole.**
>
> *Id.* at 851 (emphasis added). Further, as explained by the court in *Hogan v. Astrue,* Civil Action No. 2:11cv237–CSC, 2012 WL 3155570 (M.D.Ala. Aug. 3, 2012),
>
> > [i]n isolation, *Swindle* seems to suggest that the opinion of a nonexamining physician cannot be substantial evidence under any circumstances. *Swindle* cites *Broughton* as authority, but that case "held that the opinion of a nonexamining physician is entitled to little weight **if it is contrary to the opinion of the claimant's treating physician."** *Broughton,* 776 F.2d at 962 (emphasis added). That formulation of the law is consistent with *Lamb v. Bowen,* 847 F.2d 698 (11th Cir.1988) and *Sharfarz v. Bowen,* 825 F.2d 278 (11th Cir.1987). Thus, the court concludes that the opinion of a non-examining physician who has reviewed medical records may be substantial evidence if it is consistent with the well-supported opinions of examining physicians *or other medical evidence in the record.*
>
> *Id.* at *5 (citations modified and second emphasis added). In *Hogan,* the court ultimately affirmed the ALJ's decision, concluding "[a]fter a careful review of all the medical records, ... that the ALJ's residual functional capacity [was] consistent with **the medical evidence as a whole** as well as Hogan's testimony about her abilities." *Id.* at *6 (emphasis added).

> Similarly, here, the ALJ "agreed with ... the findings of the State agency [Dr. Jackson] with respect to [Alexander's] mental capacities" after noting that the medical expert called to testify at the hearing, Dr. Davis, agreed with those findings. (R. 48.) The ALJ then "incorporated" the findings as to Alexander's mental capacities into his RFC determination, which the ALJ also noted was "supported by the medical history of record, the minimal abnormal test and examination findings of record, the sporadic nature of [Alexander's] treatment, ... and by [Dr. Davis's] testimony." (R. 48–49.)

*Alexander v. Colvin*, No. CIV.A. 2:12-00607-N, 2013 WL 5176355, at *6 (S.D. Ala. Sept. 13, 2013)(emphasis supplied).

In his action, the ALJ discounted the opinion of Dr. Mantle that the Plaintiff was unable to engage in employment after a thorough discussion of the records and the inconsistencies noted above, a decision with which the undersigned is in complete agreement.  He also discredited the testimony of the Plaintiff to the degree that her impairments rendered her unable to engage in a limited range of sedentary work. Instead, the ALJ "afforded the most weight" to Dr. Little's assessment. (Tr. 19; Ex. 5F). Although his assessment had been prepared in 2008, "it was affirmed by [Dr. Anderson's] more general assessment" and "is in line with the treatment reports." (Tr. 19).  Both believed Plaintiff could engage in sedentary work but Dr. Little, consistent with record as a whole, placed more limitations on the full range of sedentary work.

Based on the entire record, the Court cannot say that the decision to heavily rely on the opinions of Dr. Little and Dr. Anderson is not based on substantial evidence. *See Wilkinson v. Commissioner of Soc. Sec. Admin.,* 289 Fed. App'x. 384, 386 (11th Cir. Aug. 20, 2008) (per curiam) ("The ALJ did not give undue weight to the opinion of the non-examining state agency physician because he did not rely solely on that opinion. The ALJ considered the opinions of other treating, examining, and non-examining physicians; rehabilitation discharge notes indicating improvement; and Wilkinson's own disability reports and testimony." (citing *Broughton,* 776 F.2d at 962)); *cf. Davis v.*

*Astrue,* Civil Action No. 2:08CV631–SRW, 2010 WL 1381004, at *5 (M.D.Ala. Mar. 31, 2010) (holding that "the ALJ properly assigned 'great weight' " to the opinion a non-examining physician because that opinion was "supported by and consistent with the record as a whole[,] unlike the opinion of plaintiff's treating sources.... The opinion of a non-examining physician alone does not constitute substantial evidence. *Swindle v. Sullivan,* 914 F.2d 222, 226 n. 3 (11th Cir.1990). However, ***where the ALJ has discounted the opinion of an examining source properly, the ALJ may rely on the contrary opinions of non-examining sources.***" (emphasis added and some citations omitted)).

Based on the law in this Circuit, the Court must conclude that the ALJ properly relied on the opinions of Drs. Little and Anderson and that these opinions provide the necessary linkage regarding the plaintiff's ability to perform the requirements of a limited range of sedentary work. Therefore, the ALJ's decision provides this Court with a sufficient rationale to review his conclusions and conclude that the decision is supported by substantial evidence.

## **CONCLUSION**

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 23rd day of March, 2016.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**